UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FRANK P. GRANDE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-03-177-B-W |
| | ) | |
| ST. PAUL FIRE & MARINE INSURANCE | ) | |
| COMPANY and CHARTER LAKES | ) | |
| MARINE INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON POST-TRIAL ISSUES**

## I.  STATEMENT OF FACTS

Following a jury verdict in the amount of $79,579.00 in favor of Plaintiff, the parties filed

post-trial briefs on three issues: (1) whether Plaintiff is entitled to prejudgment interest and, if so,

how much; (2) whether Plaintiff is entitled to recover attorney's fees; and, (3) whether the

$1,500.00 deductible should reduce Plaintiff's award.  The Court concludes that Plaintiff is

entitled to prejudgment interest in the total amount of $8,666.17, that he is not entitled to recover

attorney's fees, and that the $1,500.00 deductible must reduce his award.

## II.  DISCUSSION

### A.  Prejudgment Interest

Although Congress enacted a statute governing the award of post-judgment interest in

federal court litigation, see 28 U.S.C. § 1961, there is no equivalent legislation with respect to

prejudgment interest.  *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 194

(1995).  Notwithstanding the absence of a congressional directive, the Supreme Court and the

First Circuit have held that prejudgment interest is generally granted in admiralty cases.[1]  *Id.* at 195; *Clifford v. M/V Islander*, 846 F.2d 111, 113 (1st Cir. 1998) (per curiam).  "'The general rule is that, although an admiralty court has discretion to grant or deny prejudgment interest, such interest should be granted absent peculiar circumstances.'"  *New Bedford Marine Rescue, Inc. v. Cape Jeweler's Inc.*, 240 F. Supp. 2d 101, 119 (D. Mass. 2003) (quoting *Taylor v. 42 Foot Egg Harbor Hull*, Nos. 90-4077, 91-4583, and 91-5088, 1994 WL 779759, at *14 (D.N.J. June 22, 1994) (unpublished opinion)).  The rule favoring prejudgment interest stems from the principle that the defendant has had use of the plaintiff's funds and should pay a rate of interest for that use.  *Id.* (citing *City of Boston v. SS Texaco Texas*, 599 F. Supp. 1132, 1141 (D. Mass. 1984)).  "By compensating for the loss of use of money due as damages from the time the claim accrues until judgment is entered, an award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred."  *City of Milwaukee*, 515 U.S. at 196 (internal quotation marks and citations omitted).

Mr. Grande claims prejudgment interest at the rate in Maine's prejudgment interest statute, 14 M.R.S.A. § 1602-B.  *Pl.'s Post-Trial Br.* at 2-3 (Docket # 160); *see Randolph v.*

---

[1]      The First Circuit has added a twist to this rule in maritime law cases tried before juries.  In *Robinson v. Pocahontas, Inc.*, the court held that where a maritime cause of action is tried solely to a jury under diversity jurisdiction, the issue of prejudgment interest must be submitted to the jury.  477 F.2d 1048, 1052-53 (1st Cir. 1973); *see also Carey v. Bahama Cruise Lines*, 864 F.2d 201, 208 n.6 (1st Cir. 1988); *Havis v. Petroleum Helicopters, Inc.*, 664 F.2d 54, 55 (5th Cir. 1981); *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 150 (1st Cir. 1980). If the plaintiff in such a case fails to request a jury instruction regarding prejudgment interest, he is precluded from receiving it.  *Carey*, 864 F.2d at 208 n.6.
         It is doubtful *Robinson* applies.  By its own terms, *Robinson* concerns only those instances in which general federal maritime law is applied to the plaintiff's claim.  *See Robinson*, 477 F.2d at 1052-53; *Moore-McCormack Lines, Inc. v. Amirault*, 202 F.2d 893, 896-97 (1st Cir. 1953); *Parisi v. Lady In Blue, Inc.*, 433 F. Supp. 681, 682-83 (D. Mass. 1977).  At trial, the Court declined to instruct the jury on maritime law with regard to Mr. Grande's contract claim, concluding that the maritime doctrine of *uberrimae fidei* was not materially different than Maine law and, in any event, the contract contained a specific provision that controlled Mr. Grande's disclosure obligation.  *See Windsor Mount Joy Mut. Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir. 1995) (explaining that maritime law will apply if a settled "maritime rule controls the disputed issue, *and* that rule is materially different from state law") (emphasis in original); *Bank v. IBM Corp.*, 145 F.3d 420, 427 (1st Cir. 1998) (specific contractual provisions control general provisions).  If *Robinson* applies, the Defendants have waived it.  *See Defs.' Post-Trial Br.* at 5 (Docket # 165).

*Laeisz*, 896 F.2d 964, 969 (5th Cir. 1990) ("[O]ne measure of prejudgment interest that has been upheld as within a trial court's discretion is the prejudgment interest rate of the state in which the court sits." (citations omitted)); *United States v. M/V Zoe Colocotroni*, 602 F.2d 12, 14 (1st Cir. 1979) ("While a federal court is not bound by the forum's local rate of interest, it is well established that it may use the law of the forum as its guide."); *New Bedford Marine Rescue, Inc.*, 240 F. Supp. 2d at 120 ("The rate of prejudgment interest is that allowed by statute in the state where the court is located."). Defendants concede that this Court has discretion to award prejudgment interest and agree that application of 14 M.R.S.A. § 1602-B is both "logical and reasonable." *Defs.' Post-Trial Br.* at 5 (Docket # 165).

Maine's prejudgment interest statute provides in part:

> **3. Other civil actions; rate.** In civil actions…, prejudgment interest is allowed at the one-year United States Treasury bill rate plus 3%.
>
>> **A.** For purposes of this subsection, "one-year United States Treasury bill rate" means the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue.
>
> . . .
>
> **5. Accrual; suspension; waiver. …**If a notice of claim has not been given to the defendant,[2] prejudgment interest accrues from the date on which the complaint is filed. . . . If the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest is suspended for the duration of the continuance.

14 M.R.S.A. § 1602-B. Prejudgment interest accrues "from the date on which the complaint [was] filed," October 2, 2003,[3] "until the date on which an order of judgment [was] entered," July 21, 2006. *Id.*; *see Compl.* (Docket # 1); *J.* (Docket # 159).

---

[2] There is no evidence that Mr. Grande served a notice of claim upon the defendants prior to filing the complaint.

[3] Mr. Grande contends that under 14 M.R.S.A. § 1602-B, prejudgment interest should accrue from August 12, 2003, the date "defendants denied coverage . . . by means of certified mail to Frank Grande . . . ." *Pl.'s Post-Trial Br.* at 2-

There is one caveat.  Maine's prejudgment interest statute provides:  "If the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest is suspended for the duration of the continuance."  14 M.R.S.A. § 1602-B(5).  This case was initially scheduled for jury selection on April 4, 2006.  *Trial List* (Docket # 122), but Mr. Grande requested and received two continuances resulting in postponement of jury selection and commencement of trial until July 18, 2006.  (Docket # 124, 125, 129, 132, 145).  In accordance with 14 M.R.S.A. § 1602-B(5), Mr. Grande is not entitled to prejudgment interest from April 4, 2006 through July 17, 2006, a period of 105 days.[4]

That leaves the rate and amount of prejudgment interest to be calculated.  Under the statute, "prejudgment interest is allowed at the one-year United States Treasury bill rate plus 3%."  14 M.R.S.A. § 1602-B(3).  The "'one-year United States Treasury bill rate' means the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue."  *Id.* § 1602-B(3)(A).  The one-year United States Treasury bill rate for the last full week of 2002 was 1.41%.  http://www.federalreserve.gov/releases/h15/20021230/.  Add 3% as provided in 14 M.R.S.A. § 1602-B(3), and Mr. Grande is entitled to collect prejudgment interest on the verdict of $79,579.00 minus a deductible of $1,500.00[5] for a net verdict of $78,079.00, see *J.* (Docket #

---

3 (Docket # 160).  This argument misreads the statute, which provides for accrual of prejudgment interest before filing of the complaint only where the *plaintiff* serves the defendant with a "notice of claim setting forth under oath the cause of action . . . personally or by registered or certified mail."  14 M.R.S.A. § 1602-B(5).

4 The Court is aware that Mr. Grande's March 20, 2006 motion was a joint motion to continue.  *See Joint Mot. for Continuance* (Docket # 124).  Nevertheless, Mr. Grande was a moving party.

5 *See* discussion below on the applicability of the deductible.

159), at a rate of 4.41% per annum[6] for a total of 919 days at a per diem rate of $9.43 for a total of $8,666.17.[7]

### B. Attorney's Fees

Under Maine law,

> [a] court may award attorney fees based on the following: (1) the contractual agreement of the parties, (2) clear statutory authority, or (3) the court's inherent authority to sanction egregious conduct in a judicial proceeding… 'courts should exercise the inherent authority to award attorney fees as a sanction only in the most extraordinary circumstances.'

*Baker v. Manter*, 2001 ME 26, ¶ 17, 765 A.2d 583, 586 (internal citation omitted). The rule in the First Circuit is that attorney's fees are generally unavailable in admiralty actions. *Southworth Mach. Co. v. F/V Corey Pride*, 994 F.2d 37, 41 (1st Cir. 1993). Nevertheless, under admiralty law, a court has inherent power "to assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 250 (1st Cir. 1985)(internal punctuation and citations omitted).

Plaintiff fails to meet any of these three exceptions to the American Rule, whereby each party pays his own counsel fees. First, the Plaintiff does not point to any provision of the insurance contract agreement that would allow the imposition of attorney's fees. Turning to statutory authority, in his amended complaint, Plaintiff requested "attorney's fees, costs, interest

---

[6] Mr. Grande contends that the proper rate of interest is 8.27%. He arrived at this figure by adding 3% to the one-year United States Treasury bill rate "for July 17, 2006, the week prior to judgment." *Pl.'s Post-Trial Br.* at 3; *see also* http://www.federalreserve.gov/releases/h15/20060717/ (showing rate for the week of July 17, 2006). Maine's prejudgment interest statute, however, directs courts to add 3% to the United States Treasury bill rate "for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue." 14 M.R.S.A. § 1602-B(3)(A). Mr. Grande's prejudgment interest began to accrue in 2003; thus, this Court will determine the proper rate of interest on the basis of the United States Treasury bill rate for the week of December 30, 2002.

[7] There were a total of 1,024 days between October 2, 2003 and July 21, 2006, including an extra day for leap year. From this figure, the 105 days for the continuance must be subtracted for a net figure of 919. The per diem rate is $9.43: $78,079.00 x 4.41% = $3,443.28 ÷ 365 = $9.43. The net prejudgment interest figure is $8,666.17: $9.43 x 919 = $8,666.17.

and other compensation as a result of Defendants' breach of the Unfair Claims Practices Act, 24 M.R.S.A. § 2164 et seq., and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 206 et seq." *First Am. Compl. and Demand for Jury Trial* (Docket # 2). Assuming Plaintiff intended to cite 24-A M.R.S.A. § 2436-A, titled "Unfair claims settlement practice,"[8] § 2436-A is inapplicable because it does not apply to wet marine insurance. 24-A M.R.S.A. § 2401(3).[9] The Unfair Trade Practices Act, 5 M.R.S. § 206 et seq., is similarly inapplicable because there is no evidence that Plaintiff complied with its notice requirements. Section 213, "Private remedies," requires that, "[a]t least 30 days prior to the filing of an action for damages, a written demand for relief, identifying the claimant and reasonably describing the unfair and deceptive act or practice relied upon and the injuries suffered, must be mailed or delivered to any prospective respondent…." 5 M.R.S. § 213(1-A).

Finally, there remains the issue of bad faith. Even if the Court may award attorney's fees under both state and maritime law for bad faith, the judicial proceedings do not evince any conduct by the Defendants that would justify an award of attorney's fees under its inherent authority. In short, the Plaintiff's claim for attorney's fees fails to satisfy any of the three instances in which attorney's fees may be properly awarded.

### C. $1,500 Insurance Deductible

Plaintiff's Trial Brief, Second Supplemental, states:

> [i]t is Plaintiff's position that the policy's deductible clause is applicable and it specifically states that: 'The watercraft deductible will not be applied to a total loss of the watercraft.' This interpretation should be a matter of law for the Court to determine and not a matter of fact for the jury.

---

[8] 24 M.R.S.A. § 2164, the statute cited by the Plaintiff, does not exist.
[9] 24-A M.R.S.A. § 2436-A is located within chapter 27 of title 24-A; the provisions of chapter 27 do not apply to wet marine insurance. 24-A M.R.S.A. § 2401.

*Pl.'s Trial Br., Second Supplemental* at 2 (Docket # 144).  Plaintiff has waived this issue.  In his Final Pretrial Conference Memorandum, Plaintiff expressly stated that he was claiming "$75,000 less a deductible of $1,500." *Pl.'s Final Pretrial Conference Mem.* at 3 (Docket # 77).  This claim was incorporated in the Final Pretrial Conference Order.  *Report of Final Pretrial Conference and Order* at 3 (Docket # 80) ("With respect to damages, Plaintiffs claim the amount plaintiffs would have recovered had proper insurance been placed in favor of plaintiffs; hull coverage is a total loss of $75,000 less a deductible of $1,500.").  It is true that in his final pretrial brief before the second trial, the Plaintiff contended that "the policy clearly indicates that the deductible will not be applied if the claim involves the total loss of the vessel." *Pl.'s Pretrial Brief for New Trial* at 14 (Docket # 136).  However, during trial, the parties approached the Court and asked that the jury be instructed that the vessel was a total loss and that the $1,500 deductible applied to the vessel; the Court did so.[10]  The Plaintiff cannot now be heard to contest a fact to which he stipulated during trial.  The deductible in the insurance contract must be applied to reduce Plaintiff's award.[11]

## III. CONCLUSION

The Court concludes that Defendants are responsible for prejudgment interest in the amount of $8,666.17, that Plaintiff is not entitled to attorney's fees, and that the $1,500

---

[10] At the request of counsel, the Court instructed the jury:  "Ladies and gentlemen, the attorneys have advised me that they've agreed to enter into a stipulation of fact, and that stipulation is binding on you because they've agreed to it.  So you will accept as a fact that the loss to the GINA was a constructive total loss, and that means that the cost of repairing it exceeded the value of the boat.  Further, you will accept as a fact that there is a $1,500 deductible on this vessel." *Defs.' Post-Trial Br. Ex. A* at 2.  Both counsel acknowledged before the jury that this instruction was in accordance with the stipulation of the parties. *Id.* at 2-3.

[11] In their post trial brief, Defendants explain that the stipulation on the deductible was a compromise between the parties. *Defs.' Post-Trial Br.* at 1-2.  They say that Plaintiff would have had difficulty proving the amount of the loss to the GINA, because the vessel was recovered and towed to the Plaintiff's home in Maine.  Although they acknowledge that the insurance policy provides that the "watercraft deductible will not be applied to a total loss of the watercraft," they contend that the GINA was a "constructive total loss," meaning that the cost to repair exceeded the value of the vessel. *Id.*  They state that a constructive total loss is different from a total loss.  To avoid the issue, they say the parties agreed to compromise and in exchange for Defendants agreeing that the vessel was a constructive total loss, Plaintiff agreed to allow the deductible to be applied. *Id.*  Whatever the basis for the agreement, the parties agreed that the $1,500.00 deductible applied to the $75,000 loss in this case.

deductible must be applied to reduce Plaintiff's award.  The Judgment is amended to reflect the reduced award of $78,079.00.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2006